IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHANNON BERLANT,

             Plaintiff,

    v.

U.S. ELECTION ASSISTANCE COMMISSION,

             Defendant.

Case No.: 3:23-cv-00257-AN

OPINION AND ORDER

          Self-represented plaintiff Shannon Berlant brings this action against defendant U.S. Election Assistance Commission ("EAC") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking declaratory and injunctive relief to compel defendant to comply with the requirements of FOIA. On May 3, 2024, plaintiff filed a Motion to Compel Document Production and for Limited Discovery, ECF [31]. On June 28, 2024, defendant filed a Motion for Summary Judgment, ECF [36]. On July 19, 2024, plaintiff filed a Motion to Allow Limited Discovery Pursuant to Rule 56, ECF [38], which the Court construes as a second motion to compel. After reviewing the parties' pleadings, the Court finds that oral argument will not help resolve this matter. Local R. 7-1(d). For the following reasons, defendant's motion for summary judgment is GRANTED, and plaintiff's motions to compel are DENIED.

## LEGAL STANDARD

          Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphases omitted).  The substantive law determines which facts are material.  *Id.* at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.*  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

The moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.  *Id.* at 325.  Instead, the moving party need only prove that there is an absence of evidence to support the non-moving party's case.  *Id.*; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial.  *Celotex*, 477 U.S. at 324.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]"  *Anderson*, 477 U.S. at 255.

## BACKGROUND

### A.    Factual Background

The Help America Vote Act of 2002 ("HAVA") established defendant EAC and provides a statutory framework for the agency's operations and administration of programs surrounding voting system test laboratory ("VSTL") accreditation, vote system testing and certification, and other duties.  52 U.S.C. §§ 20921-20922; Pl. Mot. to Compel Doc. Produc. & for Ltd. Disc. ("Pl. First Mot."), ECF [31], at 3.

Since 2021, plaintiff has submitted at least sixty FOIA requests to defendant.  Def. Mot. Summ. J. ("Def. Mot."), ECF [36], at 2.  At issue in this action are eight of plaintiff's FOIA requests to defendant, assigned numbers 21-00037 ("-37"), 21-00040 ("-40"), 22-00071 ("-71"), 22-00076 ("-76"), 22-00165 ("-165"), 22-00174 ("-174"), 22-00175 ("-175"), and 22-00188 ("-188").  Each of the requests seeks

information relating to defendant's accreditation of VSTLs.

1. *FOIA Request -37*

a. Plaintiff's Request

On February 9, 2021, plaintiff submitted a FOIA request seeking (1) "the current version of the 'Voting System Testing and Certification Program Manual' which was in effect as of November 3, 2020, and the current manual effective as of February 9, 2021[,]" and (2) "a copy of the most recent Certificate of Accreditation for the VSTL SLI Compliance Division of Gaming Laboratories International, LLC and a copy of the original, un-modified [electronic] file[] dated January 16, 2018, 10:32:31 am." Def. Mot. 6; Compl., ECF [1], ¶ 7, Ex. A.

b. Defendant's Search for Responsive Documents and Production

For the portion of the request seeking the manual, Camden Kelliher ("Kelliher"), defendant's Chief FOIA Officer, requested that Jon Panek ("Panek"), defendant's Testing and Certification Director, produce the manual via email. Def. Mot. 7; Decl. Camden Kelliher ("Kelliher Decl."), ECF [35], ¶ 1. The manual is a product of defendant's Testing and Certification Division, which Panek is responsible for implementing in the normal course of his official duties. Def. Mot. 7. Panek produced the manual after searching all locations likely to contain responsive documents. *Id.*

For the portion of the request seeking the Certificate of Accreditation and original email, Kelliher used Microsoft eDiscovery, which searches all EAC email records and SharePoint files. *Id.* Kelliher conducted the following search: "'SLI Compliance' AND 'Accreditation' (c:c) ((Date=2017-11-01..2018-03-31))." *Id.* The eDiscovery search encompasses all locations likely to contain responsive documents and resulted in the original email and attachment. *Id.*

Together, the searches resulted in 101 pages of responsive documents, all of which defendant disclosed. Def. Mot. 3, 7-8; *see* Kelliher Decl. ¶ 13. Defendant redacted one page containing phone numbers and external email addresses under FOIA Exemption 6. Def. Mot. 7-8; Kelliher Decl. ¶¶ 13-17. Defendant released the remaining 100 pages in full. Def. Mot. 8. On July 14, 2023, Seton Parsons ("Parsons"), a member of defendant's FOIA staff, produced the final records to plaintiff. Def. Mot. 8;

Kelliher Decl. ¶ 13.  Consistent with standard FOIA practice and defendant's FOIA policy, defendant produced all records responsive to the request in a single PDF package.  Def. Mot. 8; Kelliher Decl. ¶ 13.  Also on July 14, 2023, plaintiff requested that the Certificate of Accreditation be re-produced in a different format, and defendant re-produced the record as a standalone PDF the same day.  Def. Mot. 8; Kelliher Decl. ¶¶ 18-19.  On June 11, 2024, consistent with the Ninth Circuit's ruling in *Transgender Law Center v. Immigration and Customs Enforcement*, 46 F.4th 771 (9th Cir. 2022), defendant re-produced documents after removing redactions that had previously been applied to email domain names (*i.e.*, @eac.gov) under Exemption 6.  Def. Mot. 8 n.2; Kelliher Decl. ¶ 17.

       2.    *FOIA Request -40*

          a.    Plaintiff's Request

On February 24, 2021, plaintiff submitted a FOIA request seeking:

"For both VSTLs Pro V&V, as well as SLI Compliance (and under their previous names) – please provide:
1) From 2016 thru December 2020 - all original emails, with official EAC-issued (unedited) Certificate of Accreditation as attachment to both listed VSTLs.
2) From 2016 thru December 2020 -all [*sic*] original (unedited) EAC-issued Certificate of Accreditation for the listed VSTLs[.]
3) From 2016 thru December 2020 - all EAC commissioner meeting minutes, where VSTL accreditation was discussed[.]
4) From 2016 thru December 2020 - all applications for accreditation renewal or supplemental information the VSTLs provided to the EAC."

Compl. ¶ 8, Ex. B; Def. Mot. 8.

          b.    Defendant's Search for Responsive Documents and Production

For the portions of the request seeking the original emails and Certificates of Accreditation, Kelliher used Microsoft eDiscovery to conduct the following two searches: (1) "'SLI' AND 'Certificate of Accreditation' (c:c) ((Date=2016-01-01..2020-12-31))[,]" and (2) "'Pro V&V' AND 'certificate of accreditation' (c:c) ((Date=2016-01-01..2020-12-31))."  Def. Mot. 9.  Kelliher searched Testing and Certification internal files and confirmed with Panek that the search encompasses all locations likely to contain responsive documents.  *Id.*  The search resulted in the original emails and attachments, which defendant produced.  *Id.*  Defendant has also produced multiple public work products and completed

litigation over these records. *Id.* Defendant shared these additional resources, which are available on defendant's website in the FOIA Reading Room, with plaintiff. *Id.*

For the portion of the request seeking commissioner meeting minutes, Kelliher used Microsoft eDiscovery to conduct the following search: "'minutes' AND 'accreditation' (c:c) ((Date=2016-01-01..2020-12-31))." *Id.* Kelliher also coordinated with defendant's Director of Communications to search defendant's internal files for any minutes containing the word "accreditation." *Id.* Defendant searched all locations likely to contain responsive documents and produced all records responsive to this request. *Id.*; Kelliher Decl. ¶ 23.

For the portion of the request seeking applications for accreditation renewal or related information, Kelliher used Microsoft eDiscovery to conduct the following search: "'accreditation' AND 'application' (c:c) ((Date=2016-01-01..2020-12-31))." Def. Mot. 10. Additionally, Panek manually searched defendant's internal accreditation files. *Id.* Panek confirmed that defendant searched all locations likely to contain responsive documents and produced all records responsive to this request. *Id.*

Together, the searches conducted for the -40 request resulted in 245 pages of responsive records. *Id.* at 3. Defendant disclosed 114 pages to plaintiff and fully withheld 131 pages under Exemption 4. *Id.*; Kelliher Decl. ¶ 29. Defendant redacted nine pages containing external email addresses and contact information under Exemption 6. Def. Mot. 3, 9; Kelliher Decl. ¶¶ 25-26. Defendant released the remaining 105 pages in full. Def. Mot. 3. Parsons produced the final records to plaintiff on August 14, 2023. *Id.* at 10. Consistent with standard FOIA practice, defendant produced all records responsive to the request in a single PDF package. *Id.*

 3. *FOIA Request -71*

  a. Plaintiff's Request

On June 30, 2022, plaintiff submitted a FOIA request seeking:

"For the VSTL Pro V&V, it appears from publicly available documents that Pro V&V's accreditation expired in 2017. If Pro V&V followed the VSTL manual, their application package to renew their accreditation should have been submitted by March 26th, 2017. Please provide any of Pro V&V's application package(s) for renewal that is between 12/1/2016 thru 11/3/2020[.]"

Compl. ¶ 13, Ex. C; Def. Mot. 10.

   b.  Defendant's Search for Responsive Documents and Production

   Defendant determined that the -71 request was identical to the portion of the -40 request seeking "all applications for accreditation renewal or supplemental information [Pro V&V] provided to the EAC." Def. Mot. 8, 11. Therefore, defendant deemed its search relating to the -40 request to cover all locations likely to contain documents responsive to the -71 request. *Id.* at 11. Defendant produced responsive documents to plaintiff with the same withholdings and redactions applied to the -40 production. *Id.*

   4.  *FOIA Request -76*

   a.  Plaintiff's Request

   On July 1, 2022, plaintiff submitted a FOIA request seeking "[an] electronic copy of the EAC's Certificate of Accreditation for the VSTL named NTS that covers the years 2011-2015[.]" Compl. ¶ 15, Ex. D (first alteration in original); Def. Mot. 11.

   b.  Defendant's Search for Responsive Documents and Production

   Defendant's FOIA staff determined that the Testing and Certification Division would be the custodian of the records if the records existed. Def. Mot. 11. Defendant searched all Testing and Certification folders using the search term "NTS." *Id.* Kelliher identified one record responsive to the request. *Id.* Following an additional search of Testing and Certification records, Panek confirmed that this was the lone record responsive to the -76 request. *Id.*

   Parsons produced the final record in full to plaintiff on October 13, 2023. Def. Mot. 4; Kelliher Decl. ¶ 36. In the final response letter dated October 13, 2023, defendant also provided plaintiff with publicly available information from its website. Kelliher Decl. ¶ 36.

   5.  *FOIA Request -165*

   a.  Plaintiff's Request

   On July 30, 2022, plaintiff submitted a FOIA request seeking:

"1) As far as the EAC's records on <u>VSTL accreditation</u>, please provide a copy of every certificate issued for every VSTL between 2006-2019.

2) As far as the EAC's records on VSTL accreditation, please provide every letter the EAC issued to any VSTL, with regards to REVOCATION of their accreditation for the years 2006-2019. This doesn't necessarily need to include all the back and forth between the EAC and a VSTL, but all those the EAC issued that initially advised the VSTL of revocation; then all those that the EAC issued that finalized revocation."

Def. Mot. 11-12 (emphasis in original); Compl. ¶ 16, Ex. E.

      b.      Defendant's Search for Responsive Documents and Production

      For the portion of the request seeking copies of certificates issued by defendant, Kelliher determined that the Testing and Certification Division would be the only custodian of the records if the records existed because the certificate is a result of the lab audit process overseen by that division. Def. Mot. 12; Kelliher Decl. ¶ 38. Kelliher searched all Testing and Certification folders using the search term "certificate." Def. Mot. 12. Kelliher identified all responsive documents, and Panek confirmed that the identified records were all records responsive to the request and that the requested records are routinely made publicly available on defendant's website. *Id.*; Kelliher Decl. ¶ 38. Kelliher confirmed that the internal search produced all records already available on defendant's website. Kelliher Decl. ¶ 38.

      For the portion of the request seeking letters that defendant issued to any VSTL regarding revocation, Kelliher determined that the Testing and Certification Division would be the only custodian of the records if the records existed because that division oversees lab accreditation. Def. Mot. 12; Kelliher Decl. ¶ 39. Panek searched all Testing and Certification folders maintained via SharePoint using the term "revocation" and notified Kelliher that defendant does not possess records responsive to the request. Def. Mot. 12.

      The searches resulted in ten pages of responsive documents, all of which defendant disclosed in full. *Id.* at 4. Parsons produced the records to plaintiff on October 16, 2023. Kelliher Decl. ¶ 40; Def. Mot. 4. Consistent with standard FOIA practice, defendant produced all records responsive to the request in a single PDF package. Kelliher Decl. ¶ 40. The production letter notified plaintiff that defendant does not possess records responsive to the second portion of her request and that no records were withheld. *Id.*

6.     *FOIA Request -174*

a.     Plaintiff's Request

On August 13, 2022, plaintiff submitted a FOIA request seeking:

"A copy of the ECO Analysis for ES&S 1141.  The short description from [the EAC] website states: 'This ECO addressed the Critical Vulnerability CVE-2021-34527, also known as PrintNightmare, in the Windows Operating System.  It also updates antivirus definitions for the applicable EVS systems.'  The record that I would like to receive a copy of is the VSTL lab analysis and/or report from Pro V&V for the detailed information on the change[.]"

Compl. ¶ 18, Ex. F (first alteration in original); Def. Mot. 13.

b.     Defendant's Search for Responsive Documents and Production

Defendant's FOIA staff determined that the single requested record was already publicly available on defendant's website.  Def. Mot. 13.  Kelliher searched defendant's website using the search term "ECO 1141."  *Id.*  This search of the website resulted in the single requested record.  *Id.*  Parsons produced the final record in full to plaintiff on October 16, 2023.  Kelliher Decl. ¶ 44; Def. Mot. 4.

7.     *FOIA Request -175*

a.     Plaintiff's Request

On August 13, 2022, plaintiff submitted another FOIA request seeking "all communication(s) from any VSTL and/or vote system manufacturer that submitted a request for clarification, which lead to the EAC issuing NOC 21-01[.]"  Compl. ¶ 19, Ex. G; Def. Mot. 13.

b.     Defendant's Search for Responsive Documents and Production

Defendant's FOIA staff determined that the Testing and Certification Division would be the only custodian of the records if the records existed because that division oversees clarification requests. Def. Mot. 13-14.  Panek provided information that NOC 21-01 was prompted internally to clarify defendant's VSTL Program Manual with respect to 52 U.S.C. § 20971(c)(2); therefore, defendant did not have responsive records.  *Id.* at 14.  Panek confirmed this by searching all Testing and Certification records maintained via SharePoint using the search term "NOC 21-01."  *Id.*  After this search, Panek notified Kelliher that defendant did not possess records responsive to request -175.  *Id.*  By letter dated October 16,

2023, defendant confirmed to plaintiff that NOC 21-01 was not initiated by an inquiry from a VSTL or registered manufacturer and that no records were withheld. *Id.*

        8.     *FOIA Request -188*

        a.     Plaintiff's Request

On August 17, 2022, plaintiff submitted a FOIA request seeking "[for SysTest Labs, SLI Global Solutions and SLI Compliance,[]] a copy of the company ownership information and organizational chart both before and after the company name changes[.]"  Compl. ¶ 20, Ex. H (first alteration in original); Def. Mot. 14.

        b.     Defendant's Search for Responsive Documents and Production

Defendant's FOIA staff determined that the Testing and Certification Division would be the only custodian of the records if the records existed because VSTLs submit such information to that division as part of the accreditation process.  Def. Mot. 14.  Kelliher searched all Testing and Certification records maintained via SharePoint using the search terms "SysTest Labs," "SLI Global Solutions," and "SLI Compliance," and collected all responsive records. *Id.*

The searches resulted in ten pages of responsive records, all of which defendant disclosed. *Id.* at 4.  Defendant redacted three pages containing phone numbers of third-party individuals under Exemption 6. *Id.*; Kelliher Decl. ¶ 50.  Defendant released the remaining seven pages in full.  Def. Mot. 4. Defendant also initially redacted email domain names under Exemption 6, but then re-produced to plaintiff all documents without those redactions on June 11, 2024.  Kelliher Decl. ¶ 52.  Parsons produced the final records to plaintiff on October 17, 2023. *Id.* ¶ 53.  Consistent with standard FOIA practice, defendant produced all records responsive to the request in a single PDF package. *Id.*  Parsons notified plaintiff in the response letter that no records were withheld. *Id.*

**B.**    **Procedural Background**

Plaintiff alleges that as of the date of the complaint, February 21, 2023, defendant had failed to notify plaintiff of any determinations regarding her FOIA requests, produce the requested records, or demonstrate that the requested records are lawfully exempt from production.  Compl. ¶ 22.  Plaintiff

alleges that because defendant had not responded to her FOIA requests "within the time period required by law," plaintiff "has constructively exhausted her administrative remedies." *Id.* ¶ 23.

Plaintiff initiated this action on February 21, 2023. On May 3, 2024, plaintiff filed her first motion to compel. On June 28, 2024, defendant moved for summary judgment. On July 19, 2024, plaintiff filed her second motion to compel.

## DISCUSSION

In her first motion to compel, plaintiff moves the Court to grant limited discovery and order defendant to explain its searches and reasons for its withholdings, "make a better/more complete search," and produce additional records responsive to her FOIA requests. Pl. First Mot. 2. In support of its response to plaintiff's first motion and its own motion for summary judgment, defendant has provided a declaration and exhibits detailing much of the information that plaintiff seeks to compel, thus mooting most of her first motion.

In her second motion to compel, plaintiff requests that the Court deny defendant's motion for summary judgment, or in the alternative, defer ruling on defendant's motion and grant limited discovery. Plaintiff again moves the Court to order defendant to "conduct additional searches," "answer questions about records withheld as well as the nature, scope and adequacy of any additional searches to be undertaken[,]" and produce additional records responsive to her FOIA requests. Pl. Mot. to Allow Ltd. Disc. Pursuant to Rule 56 ("Pl. Second Mot."), ECF [38], at 9. Plaintiff's second motion to compel raises substantially identical issues as her first and is thus largely duplicative.

As an initial matter, because facts in FOIA cases are rarely disputed, most FOIA cases are decided on summary judgment. *Yonemoto v. Dep't of Veterans Affs.*, 686 F.3d 681, 688 (9th Cir. 2012), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016) (per curiam); *see Animal Legal Def. Fund*, 836 F.3d at 989. "While ordinarily the discovery process grants each party access to evidence, in FOIA . . . cases discovery is limited because the underlying case revolves around the propriety of revealing certain documents." *Lane v. Dep't of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008) (citing *Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991)). "Accordingly, in

these cases courts may allow the government to move for summary judgment before the plaintiff conducts discovery." *Id.* (citations omitted).  Because plaintiff's motions to compel and the underlying case "revolve[] around the propriety of revealing" the documents that plaintiff seeks through her FOIA requests, *id.*, and the facts are undisputed, *see Yonemoto*, 686 F.3d at 688, the Court considers the three pending motions together in a summary judgment posture.

To prevail on summary judgment, an agency must show "beyond material doubt" that its search was adequate. *Transgender L. Ctr.*, 46 F.4th at 780.  The agency also has the burden of proving that it properly withheld the requested documents.  *See U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (citations omitted) ("[FOIA's] strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents.").

## A.    Adequacy of the Agency's Search

"FOIA requires an agency responding to a request to 'demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents.'"  *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 986 (9th Cir. 2009) (quoting *Zemansky v. U.S. EPA*, 767 F.2d 569, 571 (9th Cir. 1985)).  In reviewing the adequacy of a search, "the issue . . . is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate.'"  *Id.* at 987 (emphases omitted) (quoting *Zemansky*, 767 F.2d at 571); *see Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citation omitted) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.").  The adequacy of a search "is judged by a standard of reasonableness, construing the facts in the light most favorable to the requestor."  *Citizens Comm'n on Hum. Rts. v. Food & Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995) (citation omitted).

"An agency can demonstrate the adequacy of its search through 'reasonably detailed, nonconclusory affidavits submitted in good faith.'"  *Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 770 (9th Cir. 2015) (quoting *Zemansky*, 767 F.2d at 571).  An agency's declaration may meet this burden by "setting forth the search terms and the type of search performed, and averring that all files likely to contain

responsive materials . . . were searched." *Iturralde*, 315 F.3d at 313-14 (internal quotation marks and citations omitted). The affidavits need not "set forth with meticulous documentation the details of an epic search for the requested records," *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982) (per curiam), and they "are presumed to be in good faith," *Hamdan*, 797 F.3d at 770 (citing *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) (per curiam)). An agency is not required "to account for documents which the requester has in some way identified if it has made a diligent search for those documents in the places in which they might be expected to be found." *Lahr*, 569 F.3d at 987 (internal quotation marks omitted) (quoting *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1385 (8th Cir. 1985)). A court may "rely solely on government affidavits so long as the affiants are knowledgeable about the information sought and the affidavits are detailed enough to allow the court to make an independent assessment of the government's claim." *Lion Raisins v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1079 (9th Cir. 2004) (citation omitted), *overruled on other grounds by Animal Legal Def. Fund*, 836 F.3d 987.

"Determining the adequacy of the government's search terms is critical to evaluating the government's compliance with FOIA." *Inter-Coop. Exch. v. U.S. Dep't of Com.*, 36 F.4th 905, 911 (9th Cir. 2022) (citing *Reps. Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 404 (D.C. Cir. 2017)). An agency generally has "discretion in crafting search terms designed to identify responsive records" because it is "ordinarily in the best position to select terms using [its] 'unique knowledge of the manner in which [it] keep[s] [its] own files and the vocabulary [it] use[s].'" *Id.* (citations omitted). "For this reason, a FOIA requester cannot dictate the search terms for his or her FOIA request." *Id.* (internal quotation marks and citation omitted). However, the agency's "choice of search terms must be both practical and grounded in common sense." *Id.* (citing *Rein v. U.S. Pat. & Trademark Off.*, 553 F.3d 353, 363 (4th Cir. 2009)). When devising search terms, an agency should consider any "jargon, acronyms, shorthand, and common variants of terms" that it uses, but it does not need to consider "every conceivable term, variant, or misspelling[.]" *Id.* (citations omitted); *see also Hamdan*, 797 F.3d at 772 (holding that a FOIA requester is "entitled to a reasonable search for records, not a perfect one.").

Defendant has submitted the declaration of Camden Kelliher to support the reasonableness

of its searches for documents related to plaintiff's FOIA requests.  Kelliher is defendant's Chief FOIA Officer and Acting General Counsel.  Kelliher Decl. ¶ 1.  His official duties and responsibilities include the general management, oversight, and supervision of defendant's FOIA Office, which is responsible for processing and responding to all FOIA requests that defendant receives.  *Id.* ¶ 3.  Due to his experience and nature of his official duties, Kelliher is familiar with defendant's procedures for responding to FOIA requests and defendant's processing of plaintiff's eight FOIA requests.  *Id.*  Kelliher's declaration is based on his personal knowledge, his review of documents kept by defendant in the ordinary course of its business activities, and information that other of defendant's employees provided to Kelliher in the course of his official duties.  *Id.* ¶ 4.

The declaration describes in detail defendant's searches for each of plaintiff's requests, which included searches of all internal email records and SharePoint files through Microsoft eDiscovery; searches within folders of the Testing and Certification Division, the division determined to be likely to have records responsive to plaintiff's requests; and manual searches.  The declaration specifies the search terms used and types of searches performed for each portion of each request.  *Id.* ¶¶ 12, 21-24, 32, 35, 38-39, 42, 46, 49.  The declaration also confirms that the locations searched encompassed all locations likely to contain responsive documents.  *Id.*  The Court is satisfied that Kelliher is knowledgeable about plaintiff's eight FOIA requests and defendant's searches for responsive documents and that his declaration is detailed enough to allow the Court to make an independent assessment of defendant's arguments.  *See Lion Raisins*, 354 F.3d at 1079.

Plaintiff raises several objections to the adequacy of the searches that defendant performed in response to her requests.[1]  Plaintiff's challenges fall into three general categories: (1) defendant did not address whether it searched other locations, such as phones, laptops, other external media, or records housed

---

[1] Plaintiff did not present these arguments in her response to defendant's motion for summary judgment but did so instead in various portions of her briefing on her two motions to compel.  Because the Court considers the three motions together and liberally construes the filings of a self-represented litigant, *see Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022), the Court includes and addresses plaintiff's relevant arguments from her motions to compel throughout this opinion.

on prior agency IT infrastructure or the "GSA backbone," Pl. Reply 5 (footnote omitted); Pl. Second Mot. 3; (2) defendant's search terms were overly narrow and should have included additional terms, partial keywords, and/or certain email domains; and (3) defendant did not search for or produce various documents, including previous drafts of certificates, tally vote packages, notifications from VSLTs on name and address changes, and specific application-related materials, that plaintiff alleges should or do exist.[2]

Specifically, as for the portion of the -37 request seeking the most recent certificate for SLI Compliance, plaintiff argues that defendant's search was inadequate because "a search of the older (ie [*sic*] back-ups or those records that were housed on the GSA backbone) system of records [could] yield[] entirely different drafts and/or versions of this 2018 Certificate of Accreditation for SLI Compliance[.]" Pl. Second Mot. 3. Plaintiff also argues that "a better date range search would extend from 5/19/2017 to 11/30/2018[,]" rather than the range of November 11, 2017, to March 31, 2018, that defendant used, because SLI Compliance submitted application materials on May 19, 2017. Pl. Reply 7. Finally, plaintiff argues that Kelliher did not confirm with Panek "that [the produced certificate] was the earliest known accreditation certificate issued for SLI around January of 2018." *Id.*

As for the portion of the -40 request seeking Certificates of Accreditation for SLI Compliance and Pro V&V, plaintiff argues there may be other drafts or versions of certificates that defendant did not search for and produce because the metadata show that some certificates were modified after their dates of issuance. Pl. Second Mot. 4. As for the portion seeking commissioner meeting minutes, plaintiff argues that defendant should have searched for and produced "'tally vote' records" and transcripts of the meetings involving any discussion leading to defendant's issuance of certificates. *Id.*; Pl. Reply 6.

---

[2] Throughout her briefing, plaintiff also raises several objections appearing to question whether defendant or VSTLs have complied with the requirements of HAVA or the VSTL Manual. *See, e.g.*, Pl. First Mot. 6 ("Over the course of time, with normal agency business practice in running it's [sic] VSTL accreditation program, EAC should have information and records to substantiate that the agency completed its due diligence; collected all necessary information and records from the labs (following EAC's VSTL Manual); and issued agency accreditation certificates."); *id.* at 8 (footnote omitted) ("When aligning Complaint's [ECF 1] FOIA requests; with requirements in the VSTL Manual and HAVA; with produced records - it is apparent records are missing."); Pl. Second Mot. 3 ("Per HAVA's section 207 (4) all Commission votes (including votes having to do with lab accreditation) are to be published in the agency's Annual Report, yet vote(s) are missing for several years that should contain such information . . . ."). This FOIA litigation is not an appropriate forum in which to address these questions.

Plaintiff also argues that a better search would have included the following search terms: "revoke, suspend, revocation, suspension, expire, expiry, expiration, renew, reinstate, re-instate, accredit, tally-vote, tally vote, scope." Pl. Reply 8. As for the portion seeking applications for accreditation renewal and related information, plaintiff argues that defendant should have searched for and produced notifications from SLI Compliance and Pro V&V regarding changes in entity name and address. *Id.* at 7. Plaintiff also argues that defendant's search terms excluded many records that could have been sent separately by VSTLs but would still be considered part of their applications. *Id.* at 8-9. Plaintiff argues that a better search would have included the following search terms: "app, VVSG 1.1, agreement, conditions, practices, board, address, sharehold, insurer, insurance, org AND chart, brochure, annual report." *Id.* at 9.

As for the -71, -76, -165, -175, and -188 requests, plaintiff generally "challenges the adequacy of agency search[.]" Pl. Second Mot. 6-7. As for the -76 request, plaintiff argues that a better search would have included the following search terms: "@nts.com, 'National Technical[.]'" Pl. Reply 9. As for the -165 request, plaintiff argues that a better search would have included the following search terms: "revoke, cert, accredit, reaccredit, re-accredit, renew, issue, reissue, re-issue, suspend, suspension." *Id.* As for the -175 request, plaintiff argues that a better search would have included a search date range of "1/1/2020 through 7/25/2021" and the following search terms: "expire, expiration, renew, re-new, accredit, two years, 2 years, 20971, assess, reassess, quorum, audit, biennial." *Id.* at 10.

Plaintiff's assertions are unavailing. First, plaintiff's argument that defendant should have searched for and produced drafts of various Certificates of Accreditation, tally vote packages, and transcripts from commissioner meetings is irrelevant because plaintiff never requested these records. Plaintiff only requested official Certificates of Accreditation issued by defendant to VSTLs and meeting minutes. *See* Compl. ¶¶ 7-8, 15-16. Moreover, plaintiff merely speculates that any drafts of certificates ever existed.

Plaintiff's argument that defendant did not address whether it searched other specified locations is not well-taken because the records that plaintiff requested were the types of records likely to be located in emails, attachments to emails, and internal files. *See id.* ¶¶ 7-8, 13, 15-16, 18-20. Therefore,

there is no reason to doubt the good faith of defendant's declaration that its searches within its internal email records, files, and website encompassed all locations likely to contain responsive documents. Plaintiff's argument that defendant should have found other documents, including notifications from VSLTs regarding name or address changes and other specific application-related materials, speculates that these materials existed and were retained by defendant. Plaintiff presents no persuasive evidence that these records now exist and either evaded discovery during defendant's searches or were purposely and improperly withheld. Defendant is not required to account for individual documents that plaintiff speculates exist to demonstrate that its search was adequate. *See Lahr*, 569 F.3d at 987. And "[e]ven if the documents did exist when [defendant] conducted [its] searches, the failure to produce or identify a few isolated documents cannot by itself prove the searches inadequate." *Id.* at 988 (footnote omitted).

Finally, plaintiff's argument that defendant should have used additional search terms, partial keywords, or email domains also fails because plaintiff "cannot dictate the search terms" for her FOIA requests. *Inter-Coop. Exch.*, 36 F.4th at 911 (internal quotation marks and citation omitted). Given the specific nature of each of plaintiff's requests seeking different types of documents and communications related to VSLT accreditation, defendant's search terms were designed to identify records responsive to each request. For example, in response to plaintiff's requests for various Certificates of Accreditation, defendant used some combination of the VSLT's name and "accreditation," "certificate of accreditation," or "certificate," as well as the relevant time period. In response to plaintiff's request for minutes from meetings in which VSTL accreditation was discussed, defendant used the terms "minutes" and "accreditation" and manually searched meeting minutes for the word "accreditation." In response to plaintiff's request for applications for accreditation renewal, defendant used the terms "accreditation" and "application" and manually searched all internal accreditation files. In response to plaintiff's requests for other specific documents, defendant determined where those files would be located and used appropriate search terms to locate those records. Defendant chose search terms that were "practical and grounded in common sense[,]" especially considering defendant's "unique knowledge" of the manner in which it keeps its internal files and the vocabulary it uses. *Id.* (internal quotation marks and citations omitted). Plaintiff

does not provide any evidence, such as "positive indications of overlooked materials," to "raise[] substantial doubt" regarding the adequacy of defendant's searches. *Hamdan*, 797 F.3d at 771. Accordingly, defendant shows beyond material doubt that its searches were reasonably calculated to uncover responsive documents and thus adequate under FOIA.

**B.      Sufficiency of the Agency's *Vaughn* Index**

An agency must submit an affidavit pursuant to *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) that "identif[ies] the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption." *Lahr*, 569 F.3d at 989 (internal quotation marks and citation omitted). "The *Vaughn* index must be detailed enough for the district court to make a *de novo* assessment of the government's claim[s] of exemption." *Id.* (internal quotation marks and citation omitted).

Defendant has provided an eighteen-page *Vaughn* index that identifies each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the document would damage the interest protected by the claimed exemption. *See* Kelliher Decl. Ex. 9. Moreover, plaintiff acknowledges that "[defendant's c]ounsel provided a Vaughn index 11/13/2023, which [p]laintiff had difficulty interpreting, so 1/31/2024 [defendant's] counsel kindly provided a Bates index . . . ." Pl. First Mot. Ex. 4 ("Berlant Decl.") ¶ 101. Plaintiff vaguely challenges the sufficiency of defendant's *Vaughn* index, *see, e.g.*, Pl. Second Mot. 2 ("This case involves . . . insufficient agency Vaughn index[.]"); *id.* at 6-8 ("Plaintiff challenges the adequacy of agency search/declaration/Vaughn[.]"), but does not explain anywhere in her briefing how the index is inadequate. It appears that plaintiff is not complaining about the *Vaughn* index itself, but about defendant's failure to release records that plaintiff believes should be produced and its application of exemptions. Nevertheless, defendant's *Vaughn* index identifies each withheld document, the nature of the withholding, and the specific reason for each withholding. Accordingly, it is sufficient to "afford [plaintiff] a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of [each] withholding." *Wiener*, 943 F.2d at 977 (quoting *King v. U.S. Dep't of Just.*, 830 F.2d 210, 218 (D.C. Cir. 1987)).

### C.    Withholdings under FOIA Exemptions 4 and 6

"FOIA's strong presumption in favor of disclosure places the burden on the government to show that an exemption properly applies to the records it seeks to withhold." *Hamdan*, 797 F.3d at 772 (citing *Lahr*, 569 F.3d at 973).   Here, defendant has applied Exemption 4 to fully withhold records responsive to plaintiff's -40 and -71 requests and Exemption 6 to redact portions of records responsive to her -37, -40, -71, and -188 requests.

### 1.    *Exemption 4*

Exemption 4 protects from disclosure "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4).  "[T]o satisfy Exemption 4, an agency must show that the information is (1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential." *Pomares v. Dep't of Veterans Affs.*, 113 F.4th 870, 881 (citing 5 U.S.C. § 552(b)(4)).  The terms "commercial" and "financial" are given their ordinary meanings.  *Id.* at 882 (citing *Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1194 (9th Cir. 2011)).  "Information is 'commercial' if it pertains to 'business [or] trade,' or is designed to be profitable." *Id.* (alteration in original) (citation omitted).  "[I]nformation is 'confidential' if it is 'customarily kept private, or at least closely held, by the person imparting it.'"  *Id.* (quoting *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 434 (2019)[3]).  Here, defendant has applied Exemption 4 to withhold records that VSLTs submitted to defendant during the course of maintaining their accreditations and marked as "proprietary" and/or "confidential."  *See* Kelliher Decl. Ex. 9.  These records include information about the VSTLs' procedures regarding conflicts of interest, background investigations, archiving of voting test materials, quality control and internal audits, data storage and management, process improvements, contracting and purchasing, organizational structure, equipment handling and storage, statistical sampling, report writing,

---

[3] In *Food Marketing Institute*, the Supreme Court suggested that the party receiving the information might also need to assure confidentiality for the information to be considered confidential but declined to decide whether such assurance was necessary.  588 U.S. at 434-35.  Nevertheless, the Court need not resolve that question because defendant states that "the VSTLs provided [these documents] in confidence and under [defendant]'s express and implied assurance that such information would remain confidential from disclosure under Exemption 4."  Def. Mot. 24.  Plaintiff does not challenge defendant's application of Exemption 4.

root cause analysis, and customer service. *See id.*

      First, the records that defendant withheld under Exemption 4 are commercial because they pertain to the VSTLs' processes and methodologies relating to their internal business operations. Second, each VSTL that submitted information to defendant as part of its application for accreditation is a "person" as defined by FOIA. *See* 5 U.S.C. § 551(2) (defining "person" to include "an individual, partnership, corporation, association, or public or private organization other than an agency"); *FCC v. AT&T Inc.*, 562 U.S. 397, 408-09 (2011). Third, the VSTL designated all the withheld records as "proprietary" and/or "confidential" when it submitted the records to defendant during the course of maintaining the VSTL's accreditation. *See* Kelliher Decl. Ex. 9. VSTLs customarily keep such documents regarding their business operations private to maintain their competitive positions. Defendant also provided express and implied assurances to the VSTLs, including through its VSTL Program Manual, that such information would remain confidential. Accordingly, defendant satisfies its burden of showing that it properly withheld these records under Exemption 4.

      2.   *Exemption 6*

      Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). To satisfy Exemption 6, the threshold requirement is that the information must be contained in personnel, medical, or "similar" files. *See Forest Serv. Emps. for Env't Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1024 (9th Cir. 2008). If the threshold test is satisfied, courts then "consider whether the disclosure of the [personally identifying information] would constitute a 'clearly unwarranted' invasion of . . . personal privacy." *Id.* (quoting 5 U.S.C. § 552(b)(6)). Here, defendant has applied Exemption 6 to redact the previous work phone numbers of defendant's former Testing and Certification Director Brian Hancock ("Hancock") and former Acting Testing and Certification Director Ryan Macias ("Macias"), as well as the contact and insurance information of third-party individuals. *See* Kelliher Decl. Ex. 9; Berlant Decl. ¶ 67.

a.    "Similar Files"

"The phrase 'similar files' has a 'broad, rather than a narrow meaning.'"  *Transgender L. Ctr.*, 46 F.4th at 783 (internal quotation marks omitted) (quoting *Forest Serv. Emps.*, 524 F.3d at 1024). "[G]overnment records containing information that applies to particular individuals satisfy the threshold test of Exemption 6."  *Id.* at 784 (alteration in original) (quoting *Forest Serv. Emps.*, 524 F.3d at 1024).

Plaintiff objects primarily to the redactions of Hancock and Macias's prior work phone numbers, arguing that these phone numbers were already disclosed in a document published on defendant's website and that agency staff work phone numbers are not personal information that meets the Exemption 6 threshold.  *See, e.g.*, *Leadership Conf. on C.R. v. Gonzales*, 404 F. Supp. 2d 246, 257 (D.D.C. 2005) (finding that names and work telephone numbers of government paralegals did not meet threshold for Exemption 6 because that information is not "similar to a 'personnel' or 'medical' file").  However, since *Gonzales*, the District of District of Columbia has repeatedly held that such information is, in fact, protected by Exemption 6.  *See, e.g.*, *Lewis v. U.S. Dep't of Just.*, 867 F. Supp. 2d 1, 16-17 (D.D.C. 2011) (holding that names and "personally identifiable information" of certain personnel were properly withheld under Exemption 6); *Schwaner v. Dep't of the Army*, 696 F. Supp. 2d 77, 82-83 (D.D.C. 2010) (holding that Exemption 6 applied to names and other "personal information" of government personnel); *Bangoura v. U.S. Dep't of the Army*, 607 F. Supp. 2d 134, 147-49 (D.D.C. 2009) (finding that names and "identities" of government personnel were "properly withheld" under Exemption 6).  Moreover, defendant has redacted Hancock and Macias's former phone numbers because these phone numbers have now been reassigned to other employees who are not involved in the subject matter at issue.  These agency phone numbers are thus "information that applies to particular individuals" to which Exemption 6 applies.  *See Transgender L. Ctr.*, 46 F.4th at 784 (internal quotation marks and citation omitted).  The contact and insurance information of third-party individuals is also personal identifying information ("PII") that undoubtedly meets the threshold test.  *See id.*  Accordingly, defendant shows that the redacted records are "similar files" that satisfy the threshold requirement of Exemption 6.

b.      "Clearly Unwarranted" Invasion of Personal Privacy

Courts use a "two-step test for balancing individual privacy rights against the public's right of access." *Cameranesi v. U.S. Dep't of Def.*, 856 F.3d 626, 637 (9th Cir. 2017). "First, [courts] evaluate the personal privacy interest at stake to ensure 'that disclosure implicates a personal privacy interest that is nontrivial or more than de minimis.'" *Id.* (quoting *Yonemoto*, 686 F.3d at 693) (cleaned up). "Second, if the agency succeeds in showing that the privacy interest at stake is nontrivial, the requester 'must show that the public interest sought to be advanced is a significant one and that the information [sought] is likely to advance that interest.'" *Id.* (quoting *Lane*, 523 F.3d at 1137) (alteration in original). "Otherwise, the invasion of privacy is unwarranted." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004).

i.      *Privacy Interest*

"Disclosures that would subject individuals to possible embarrassment, harassment, or the risk of mistreatment constitute nontrivial intrusions into privacy under Exemption 6." *Cameranesi*, 856 F.3d at 638 (citations omitted) (collecting cases). "The personal privacy contemplated by Exemption 6 . . . is not some limited or cramped notion of that idea." *Id.* (internal quotation marks omitted) (quoting *Yonemoto*, 686 F.3d at 693). "Rather, a disclosure implicates personal privacy if it affects either the individual's control of information concerning his or her person, or constitutes a public intrusion long deemed impermissible under the common law and in our cultural traditions[.]" *Id.* (quoting *Reps. Comm.*, 489 U.S. at 763; *Favish*, 541 U.S. at 167) (internal quotation marks and alteration omitted).

Here, defendant argues that substantial privacy interests cognizable under FOIA exist in the PII that it redacted, *i.e.*, the names and contact information of defendant's low- and mid-level employees and private individuals corresponding with them. Defendant argues that given the nature of defendant's work relating to VSTLs and voting systems used in federal elections, defendant and VSTL employees are at an increased risk of threats to their privacy, including harassment and mistreatment. Defendant's declaration shows that "there has been a rise in threats against election officials, administrators, poll workers, and others associated with conducting elections." Kelliher Decl. ¶ 59. Plaintiff does not dispute the rise in threats to individuals involved in administering elections and acknowledges that such threats are

a "travesty," but argues that defendant and VSTLs do not themselves administer elections; "state and local volunteer[s] and local / state government officials" do. Pl. Reply 11. However, plaintiff's argument does not negate the potential for disclosure of this PII to "give rise to possible harassment" or mistreatment of these employees as a result of their association with defendant or VSTLs—"exactly the sorts of risks that courts have recognized as nontrivial[.]" *Cameranesi*, 856 F.3d at 642 (collecting cases). Moreover, low- and mid-level agency employees have a stronger interest in personal privacy than do senior officials. *Forest Serv. Emps.*, 524 F.3d at 1025-26 (citing *Dobronski v. FCC*, 17 F.3d 275, 280 n.4 (9th Cir. 1994); *Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir. 1984)). Defendant thus shows that these individuals have a nontrivial privacy interest in their redacted PII.

ii.    *Public Interest*

Because defendant establishes a nontrivial privacy interest, the inquiry turns toward balancing that privacy interest against the public interest in disclosure. *See Cameranesi*, 856 F.3d at 639. In evaluating the public interest in disclosure, "[t]wo guideposts are critical to [a court's] analysis." *Forest Serv. Emps.*, 524 F.3d at 1024-25. First, "the only relevant public interest is the extent to which disclosure would contribute significantly to public understanding of the operations or activities of the government." *Id.* at 1025 (alteration, citations, and quotation marks omitted). "In other words, 'information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct' is not the type of information to which FOIA permits access." *Id.* (quoting *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 495-96 (1994)).

Second, the reason that the FOIA requester seeks the requested information is "irrelevant to [a court's] inquiry." *Id.* "Whether an invasion of privacy is *warranted* cannot turn on the purposes for which the request for information was made." *Id.* (quoting *U.S. Dep't of Def.*, 510 U.S. at 496) (alteration omitted) (emphasis in original) (internal quotation marks omitted). Because "FOIA provides every member of the public with equal access to public documents . . . , information released in response to one FOIA request must be released to the public at large." *Id.* (citations omitted). As such, courts "consider the consequences of disclos[ing] the [requested information] to the entire public." *Id.*

Here, plaintiff argues that "there has been much misinformation and disinformation surrounding elections," and "[t]here is a high amount of public interest and need for the public to have transparency and openness in how voting machines are tested and how agency officials conduct these programs surrounding voting machine certification." Pl. Reply 11. While plaintiff's asserted public interest is important as a general matter, plaintiff does not explain how revealing the PII of defendant's low- and mid-level employees and the VSTL representatives they interact with will contribute significantly to the public's understanding of defendant's activities regarding VSTL accreditation. Further, because much of the information regarding defendant's accreditation of VSTLs is publicly available on defendant's website, the release of these individuals' PII will not significantly further any purported public interest in monitoring defendant's performance. *See Forest Serv. Emps.*, 524 F.3d at 1028 (holding that release of PII was unwarranted because "substantial information" was "already in the public domain"). Because plaintiff does not show that the requested information is likely to advance the asserted public interest, the public interest does not outweigh the privacy interest at stake. *See Nat'l Ass'n of Ret. Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989) ("[S]omething, even a modest privacy interest, outweighs nothing every time."). Disclosure of the redacted PII would therefore constitute a clearly unwarranted invasion of privacy. Accordingly, defendant satisfies its burden of showing that it properly redacted these documents under Exemption 6.

## D.    Segregability

FOIA provides that any "reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). A district court must "make specific findings on the issue of segregability[,]" *Wiener*, 943 F.2d at 988, and cannot "simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof, with respect to that document[,]'" *Transgender L. Ctr.*, 46 F.4th at 785 (internal quotation marks omitted) (quoting *Hamdan*, 797 F.3d at 779).

The agency has the burden of establishing that all reasonably segregable parts of a document have been segregated and disclosed. *Hamdan*, 797 F.3d at 779 (citing *Pac. Fisheries, Inc. v.*

*United States*, 539 F.3d 1143, 1148 (9th Cir. 2008)).  "The agency can meet this burden by providing . . . a reasonably detailed description of the withheld material and 'alleging facts sufficient to establish an exemption.'"  *Id.* (quoting *Pac. Fisheries*, 539 F.3d at 1148).  The district court can rely on an agency's declaration in making its segregability determination.  *Id.*

   As described above, defendant's declaration and *Vaughn* index are sufficiently detailed such that the Court can take them at face value.  The *Vaughn* index identifies each withheld document individually, indicates whether the withholding is full or partial, provides an individualized explanation of the material being withheld, and specifies the corresponding exemption.  *See* Kelliher Decl. Ex. 9.  With respect to the documents fully withheld under Exemption 4, each of these documents is an attachment to an email relating to the maintenance of a VSTL's accreditation.  Defendant provides the subject, sender, and recipients of each email; the name of each withheld attachment; and a description of the type of business procedure explained within each attachment.  Defendant further explains that each withheld document is not segregable because the entirety of each document details the internal processes of a VSTL, is marked as "proprietary" and/or "confidential," and includes the commercial interests of the VSTL.  Based on defendant's declaration, defendant demonstrates that no information contained within the withheld documents is segregable.  With respect to the documents redacted under Exemption 6, defendant shows that it redacted only the PII and disclosed the remaining segregable information.  Accordingly, defendant meets its burden of establishing that it has segregated and disclosed all reasonably segregable parts of the requested documents.

   As a final matter, there is ample evidence that defendant has acted in good faith in its dealings with plaintiff.  For example, when plaintiff had trouble interpreting the *Vaughn* index that defendant provided to her, defendant produced a Bates index to help clarify.  On three occasions, defendant re-produced documents to plaintiff, once after plaintiff clarified her request and twice after removing redactions of email domains pursuant to the Ninth Circuit's ruling in *Transgender Law Center*.  Plaintiff's repeated musings that defendant may have acted in bad faith are purely conjectural and without proper evidentiary support.

**CONCLUSION**

For the foregoing reasons, defendant's Motion for Summary Judgment, ECF [36], is GRANTED, and plaintiff's Motion to Compel Document Production and for Limited Discovery, ECF [31], and Motion to Allow Limited Discovery Pursuant to Rule 56, ECF [38], are DENIED.

IT IS SO ORDERED.

DATED this 2nd day of December, 2024.

Adrienne Nelson
United States District Judge